UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| U.L. COLEMAN COMPANY, LTD, ET AL. | CIVIL ACTION NO. 08-2011 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| BOSSIER CITY-PARISH METROPOLITAN PLANNING COMMISSION, ET AL. | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM RULING**

Before the Court are Motions to Dismiss (Record Documents 68, 83, and 90) filed by Defendants Bossier City-Parish Metropolitan Planning Commission ("the MPC") and the City of Bossier City ("Bossier City"). Defendants seek dismissal of Plaintiffs'[1] complaint on the grounds of ripeness and failure to state a claim upon which relief may be granted. See id. Plaintiffs have opposed the motions to dismiss. See Record Documents 74, 88, and 97. For the reasons which follow, the Motions to Dismiss are **GRANTED IN PART AND DENIED IN PART**.[2]

**I.    BACKGROUND.**

In 2003, representatives from U.L. Coleman Company, Ltd. ("Coleman Company") and from Bossier City entered into negotiations regarding the development of a 24.8 acre tract of land, which was owned by Bossier City. See Record Document 1 at ¶ 5. The land fronted on the east side of Arthur Ray Teague Parkway ("the Parkway"), in the neighborhood of the CenturyTel Center. See id. The Coleman Company was interested in purchasing the property to build a multi-family/multi-use development, which will be

---

[1]The three plaintiffs in this matter are U.L. Coleman Company, Ltd., Sequoia Venture No. 2, Ltd., and A. Teague Parkway, LLC. See Record Document 1 at ¶ 1.

[2]Alternatively, the City moved to dismiss Plaintiffs' claims pursuant to Federal Rule of Civil Procedure 56. See Record Document 90. The Rule 56 motion is **DENIED** to allow additional time for discovery. See F.R.C.P. 56(f)(1); Record Document 97 at 43-46.

referred to as the Walker Place Development. See id.

Plaintiffs contend, and the Court assumes to be true for purposes of the instant Memorandum Ruling, that "at all times [the Coleman Company] was assured by City officials that if they purchased the 24.8 acre tract and other adjacent tracts it would have curb cut access to the Parkway to maximize the development opportunity for the benefit of the City and its citizens, the occupants of the development, and the owners of the development." Id. Based on these assurances, the Coleman Company entered into a contract to purchase the 24.8 acre tract on August 13, 2004 for $1.43 million. See id. Sequoia Venture No. 2, Ltd., a Coleman Company affiliate, also entered into additional contracts to purchase adjacent tracts of land totaling 27.32 acres. See id. The total land acquired by the Coleman Company and its affiliates was approximately 52 acres. See id. Again, Plaintiffs allege that their purchase of the 52 acres was based on continued assurances from various Bossier City officials that the development would have curb cut access to the Parkway. See id.

In November 2005, the MPC approved the rezoning application for the development project. At that same time, the MPC also approved the Planned Unit Development ("PUD") application for the entire 52 acre development. See id. The site plan presented was for the first phase of development, i.e., the southern 24.8 acre tract, and showed no curb cut to the Parkway. See Exhibit D-18 (Hearing on Preliminary Injunction).

In May 2006, Plaintiffs submitted their final application to the MPC for approval of the PUD on the entire 52 acres. See Record Document 1 at ¶ 5. This amended PUD application included a new site plan showing a curb cut to the Parkway. See Exhibits D-20; P-26; P-27 (Hearing on Preliminary Injunction). On June 19, 2006, the MPC held a public hearing on the amended PUD. The MPC approved the PUD subject to a traffic study to be

submitted by Plaintiffs. See Record Document 1 at ¶ 5. On June 27, 2006, Plaintiffs filed their first building permit application for the Walker Place Development. See Record Document 103, citing Exhibit P-29 (Hearing on Preliminary Injunction). Plaintiffs submitted the traffic study on July 13, 2006. See Record Document 1 at ¶ 5.

By letter dated July 14, 2006, MPC Executive Director Sam Marsiglia informed Plaintiffs that the zoning of the 52 acre tract would be rescinded. See id. The rescission was purportedly based on Plaintiffs' questionable title to a portion of the 52 acre tract. See id. Litigation in state court ensued over the ownership of this tract of land and the issue was ultimately resolved in Plaintiffs' favor in January 2008. See id.

On July 14, 2006, the City Council introduced, and adopted on August 1, 2006, an ordinance limiting curb cuts onto the Parkway to those in existence on July 1, 2006, unless specifically approved by ordinance adopted by the Council. See id.; see also Exhibits P-36, P-38 (Hearing on Preliminary Injunction). Also on August 1, 2006, a motion to introduce an ordinance authorizing a curb cut on the Parkway for the Walker Place Development failed by a unanimous vote. See id.; see also Exhibit P-36 (Hearing on Preliminary Injunction).

In December 2006, Bossier City denied Plaintiffs' building permit and voided the application. See Record Document 103, citing Exhibit P-43 (Hearing on Preliminary Injunction), P-41 (Hearing on Preliminary Injunction), P-42 (Hearing on Preliminary Injunction), and Record Document 53 at 671. Among other things, the decision was based on the curb cut shown in the plans and the fact that there was no deceleration lane on Walker Place. See id.

On August 15, 2008, Plaintiffs filed a new application for a building permit for the Walker Place Development. See id., citing Exhibit P-64 (Hearing on Preliminary Injunction).

By letter dated September 8, 2008, MPC Executive Director Sam Marsiglia informed Plaintiffs that there were "several items [that] remain to be satisfied in the technical review of the plans and specifications [in relation to the Walker Place Apartment Development]," namely "the deceleration lanes on Walker Place" and "the elimination of any reference to a curb cut on the Arthur Ray Teague Parkway." See Record Document 1 at ¶ 5; see also Exhibit P-57 (Hearing on Preliminary Injunction). Executive Director Sam Marsiglia went on to state that once the technical requirements were addressed, the City would continue its processing of the plans. See Exhibit P-57 (Hearing on Preliminary Injunction).

Plaintiffs did not comply with the aforementioned technical requirements and the instant litigation ensued. Plaintiffs have asserted a claim for violation of their substantive due process right under the Fourteenth Amendment. See Record Document 1 at ¶¶ 6-7.[3] Alternatively, and only in the event that the Court should conclude that they were not subjected to unconstitutional conditions or deprived of substantive due process, Plaintiffs assert an inverse condemnation claim under the Louisiana Constitution. See id. at ¶ 64.[4] Plaintiffs also seek injunctive relief prohibiting Defendants from refusing to issue the building permit for the multi-family apartments planned for the 16.67 acre tract. See id. at ¶¶ 74-81, 83(3).[5] Finally, Plaintiffs have alleged detrimental reliance and tortious damage under Louisiana state law. See Record Document 1 at ¶¶ 69-73, 84-86; Record Document 75 at ¶ 12. Defendants have filed motions to dismiss, seeking dismissal of all of Plaintiffs'

---

[3]Plaintiffs' substantive due process claim is brought under 42 U.S.C. § 1983.

[4]"Plaintiffs are expressly not asserting a taking under the Fifth Amendment of the United States Constitution at this time." Record Document 1 at ¶ 64.

[5]In February 2009, the Court denied Plaintiffs' Motion for Preliminary Injunction, finding that Plaintiffs failed to establish a substantial threat that they would suffer irreparable injury if the injunction was not granted. See Record Documents 62-63.

claims.

## II.    LAW AND ANALYSIS.

### A.    Rule 12(b)(1) Standard.

Pursuant to Federal Rule of Civil Procedure 12(b)(1), a lawsuit must be dismissed if it appears that the Court does not possess subject matter jurisdiction. See Montecino v. Louisiana, 55 F.Supp.2d 547, 550 (E.D.La. 1999). The plaintiffs bear the burden of establishing subject matter jurisdiction. See Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377, 114 S.Ct. 1673 (1994). The Court may base its decision on a Rule 12(b)(1) motion on: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; and (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. See Barrera-Montenegro v. U.S., 74 F.3d 657, 659 (5th Cir.1996). If the allegation of jurisdiction is insufficient but jurisdiction may be inferred from facts pleaded in the complaint, however, the motion must be denied. See Montecino, 55 F.Supp.2d at 550.

Ripeness is a element of subject matter jurisdiction, as a court has no power to decide disputes that are not yet justiciable. See Sample v. Morrison, 406 F.3d 310, 312 (5th Cir.2005) (per curiam). Courts should dismiss cases for lack of ripeness if the issues presented are abstract or hypothetical. See Monk v. Huston, 340 F.3d 279, 282 (5th Cir.2003). To determine whether claims are ripe, we evaluate (1) the fitness of the issues for judicial resolution, and (2) the potential hardship to the parties caused by declining court consideration. See Texas v. U.S., 497 F.3d 491, 498 (5th Cir.2007). The fitness and hardship prongs must be balanced. See id. A case is generally ripe if any remaining questions are purely legal ones. See New Orleans Pub. Serv., Inc. v. Council of City of New Orleans, 833 F.2d 583, 587 (5th Cir.1987).

B.     Ripeness.

Defendants argue that the claims presented in the instant matter are not ripe for review. The heart of their contention is that until the City Council has denied a motion to introduce an ordinance authorizing a curb cut to the Parkway for the Walker Place Development, there is no final decision on the August 2008 building permit. Defendants acknowledge that such a motion was presented and denied in August 2006, but state that there is nothing preventing Plaintiffs from seeking to reintroduce a similar motion to the City Council. Conversely, Plaintiffs argue that their claims are ripe, but also note that the facts and circumstances presented in the instant matter satisfy the "futility exception, a separate ground for finding ripeness." Record Document 74 at 17.

In <u>Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City</u>, 473 U.S. 172, 105 S.Ct. 3108 (1985), the Supreme Court held that a claim that the application of government regulations effects a taking of a property interest is not ripe until (1) the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue, and (2) the claimant has sought compensation for the taking through procedures the state has provided for doing so. <u>See id.</u> at 186, 194, 105 S.Ct. at 3116, 3120. The first prong of the ripeness requirement has also been applied to a substantive due process claim wherein governmental zoning actions are challenged as arbitrary and capricious. Here, Plaintiffs have alleged a substantive due process claim, but have clearly stated that they are not asserting a taking under the Fifth Amendment of the United States Constitution at this time. Thus, only the first prong of the <u>Williamson</u> test is applicable to the instant matter.

Plaintiffs have cited <u>Standard Materials, Inc. v. City of Slidell</u>, 96-0684 (La.App. 1 Cir. 9/23/97), 700 So.2d 975, in support of the application of the futility exception to the instant

matter. In Standard Materials, the Louisiana state court stated:

> The ripeness requirement in a zoning case is subject to a "futility exception;" however, in order to rely on the exception, an applicant must make a showing which demonstrates a pattern of prior administrative denials and official position hostile to the applicant's interest by the regulatory agency.

Id. at 982 n. 7. A review of federal case law reveals that most of the cases applying the futility exception to the ripeness requirement do so in the context of a takings claim. See MacDonald, Sommer & Frates v. Yolo County, 477 U.S. 340, 106 S.Ct. 2561 (1986) (discussing futility exception in the context of inverse condemnation claim); Southview Associates, Ltd. v. Bongartz, 980 F.2d 84, 98 (2nd Cir. 1992) (discussing futility exception to the final decision requirement in relation to a takings claim); Kinzli v. City of Santa Cruz, 818 F.2d 1449, 1454 (9th Cir. 1987) ("Nevertheless, their takings claim may be ripe under the Ninth Circuit's 'futility exception' to the threshold requirement of a final decision. Under this exception, the requirement of the submission of a development plan is excused if such an application would be an 'idle and futile act.'"). However, at least one Louisiana federal district court has considered the futility exception in determining the ripeness of a substantive due process claim:

> Specifically, the Court found that plaintiffs' substantive due process claims were not ripe, as there had been no showing of a final agency decision as required by the Supreme Court in Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City, 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985). The Court further found that the circumstances did not warrant invocation of the futility exception to the requirement of a final decision.

Global ADR, Inc. v. City of Hammond, No. 03-0457, 2004 WL 2694902, *1 (E.D.La. Nov. 23, 2004).

Even if the Court assumes that there has been no final decision in this action due to the failure to reurge a motion to introduce an ordinance allowing a curb cut for the

Walker Place Development, Plaintiffs have adequately plead facts sufficient to invoke the futility exception. Further, the Court sees no just reason not to apply the futility exception to the instant matter. A review of the complaint and consideration of the facts presented during the preliminary injunction hearing[6] establish that both the MPC and the City Council have taken a definitive "hardened position" regarding the Walker Place Development and its curb cut access to the Parkway. Record Document 74 at 18. It was apparent from the obvious rancor of the City Council members who testified at the hearing on the Preliminary Injunction that any attempt to reurge a motion to introduce an ordinance authorizing a curb cut to the Parkway for the Walker Place Development would be a vain and useless effort. Based on these observations and the factual allegations set forth in the complaint and amended complaint, Plaintiffs have made a showing which demonstrates a pattern of prior denials and official position hostile to their interest. The clear inference based on the long, varied history between Plaintiffs, the MPC, and the City Council is that a motion to introduce a ordinance seeking a curb cut in conjunction with the August 2008 building permit would be an idle and futile act. The Court also notes its consideration of the potential hardship that would be caused by declining consideration[7] and its desire to avoid piecemeal litigation, both of which weigh in favor of applying the futility exception in this

---

[6]The Court may base its Rule 12(b)(1) decision on the complaint alone, the complaint supplemented by undisputed facts evidenced in the record, and the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. See Barrera-Montenegro, 74 F.3d at 659.

[7]In determining whether the claim is ripe, the Court is to balance the fitness of the issues for judicial resolution and the potential hardship to the parties caused by declining court consideration. See Texas v. U.S., 497 F.3d at 498.

case.[8] Accordingly, the Motions to Dismiss are **DENIED** on the ground of ripeness.

### C. Rule 12(b)(6) Standard.

Federal Rule of Civil Procedure 12(b)(6) allows for dismissal of an action "for failure to state a claim upon which relief can be granted." While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, in order to avoid dismissal, the plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-65 (2007); see also Cuvillier v. Taylor, 503 F.3d 397, 401 (5th Cir. 2007). A plaintiff's obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. The Supreme Court recently expounded on the Twombly standard, explaining that a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face. See Ashcroft v. Iqbal, – U.S. –, 129 S.Ct. 1937, 1949 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. In evaluating a motion to dismiss, the Court must construe the complaint liberally and accept all of the plaintiff's factual allegations in the complaint as true. See In re Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2009).

### D. Federal Claims Asserted Pursuant to 42 U.S.C. § 1983.

The MPC moves for dismissal of Plaintiffs' Section 1983 claims, arguing that Plaintiffs have not plead that any specific policy or custom of the MPC caused them

---

[8]Although a claim will not be ripe without a final decision, "a property owner is of course not required to resort to piecemeal litigation or otherwise unfair procedures in order to obtain this determination." Southview Associates, Ltd., 980 F.2d at 99, citing MacDonald, 477 U.S. at 350 n. 7, 106 S.Ct. at 2567 n. 7 and Williamson, 473 U.S. at 205-06, 105 S.Ct. at 3126-27.

constitutional harm. See Record Document 68-2 at 8. Rather, Plaintiffs rely solely on the individual acts of the MPC's Executive Director. See id. Likewise, Bossier City argues that Plaintiffs fail to state a Section 1983 municipal liability claim based upon the actions of the Office of Permits. See Record Document 90-2 at 8-13.[9]

In a Section 1983 lawsuit against a municipality, a plaintiff must show that his constitutional injury was the result of official policy, custom, or the act of an official policy maker. See Monell v. Dep't of Soc. Servs. of City of NY, 436 U.S. 658, 98 S.Ct. 2018 (1978). The Monell court concluded "that a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Id. at 694, 98 S.Ct. at 2037-2038.

"Proof of municipal liability sufficient to satisfy Monell requires: (1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy (or custom)." Pineda v. City of Houston, 291 F.3d 325, 328 (5th Cir.2002). The most obvious way for a plaintiff to meet this requirement is to show that his constitutional injury was the result of "[a] policy statement, ordinance, regulation, or decision that [was] officially adopted

---

[9]Additionally, both the MPC and Bossier City argue that Plaintiffs' Section 1983 claims have prescribed. See Record Document 68-2 at 14-15; Record Document 90-2 at 5-7. It is true that many of the challenged actions on the part of both the MPC and the City Council occurred more than one year prior to the filing of the instant lawsuit. Yet, Plaintiffs have identified distinct acts on the part of various Bossier City officials that occurred during 2008. They have also plead detailed factual allegations, which the Court must accepts as true at this stage, that may implicate the continuing tort theory and/or the doctrine of *contra non valentem*. Accordingly, the Court finds that Plaintiffs' Section 1983 municipal liability claims contain sufficient factual detail and particularity to survive the MPC's and Bossier City's Rule 12(b)(6) attack on the ground of prescription.

and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers . . . delegated policy-making authority." Webster v. City of Houston, 352 F.3d 994, 1013 (5th Cir.2003). Second, a plaintiff may also establish municipal liability through "a persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." Webster v. City of Houston, 735 F.2d 838, 841 (5th Cir.1984) (en banc). Finally, a plaintiff may establish municipal liability based on a single decision "rendered by an individual with 'final policy making authority,' as determined under state law." Gelin v. Housing Authority of New Orleans, 456 F.3d 525, 527 (5th Cir.2006).

Here, Plaintiffs' Section 1983 municipal liability claims against the MPC are sufficiently supported by their factual allegations. Relying on the Unified Development Code ("UDC"), Plaintiffs have alleged that the MPC is the final policymaking authority with respect to the final approval of PUDs. See P-65 at 2.2; see also Peterson v. City of Fort Worth, Tex., 588 F.3d 838, 847 (5th Cir. 2009) ("A policy or custom is official only when it results from the decision or acquiescence of the municipal officer or body with final policymaking authority over the subject matter of the offending policy."). Plaintiffs have also detailed the MPC's rescission of the zoning of the 52 acre tract. However, the same can not be said for Plaintiffs' Section 1983 claims against Bossier City based upon the actions of the Office of Permits. Other than conclusory assertions, Plaintiffs have presented no supporting facts to indicate that the Office of Permits and/or the City Engineer have been delegated *exclusive policy making authority* with regard to the grant or denial of building permits. Therefore, Plaintiffs' factual allegations as to the Office of Permits are insufficient

to raise their claim for relief above a speculative level.[10]

### E.     Injunctive Relief.

Plaintiffs are seeking an injunction ordering Defendants to issue a building permit without the condition of removing the curb cut to the Parkway. In a supplemental memorandum, Bossier City and the MPC seek dismissal of Plaintiffs' claim for injunctive relief, arguing that it is now moot because Plaintiffs have "voluntarily abandoned the . . . apartment and roadway plans" contained in the August 2008 building permit. Record Document 103 at 7. Yet, Defendants concede that "the issue of the curb cut to the . . . Parkway appears to remain under the [Plaintiffs'] new plans." Id. This concession seems to demonstrate that even though new building plans exist, Plaintiffs' "personal interest" in a curb cut exists now just as it did at the commencement of the litigation. See U.S. Parole Comm'n v. Geraghty, 445 U.S. 388, 397, 100 S.Ct. 1202, 1209 (1980) (defining "mootness as 'the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).'"). Thus, based on the showing made, the Court finds that Plaintiffs' claim for injunctive relief is not moot and shall proceed.

### F.     State Law Claims.

Plaintiffs have also plead state law claims for inverse condemnation, detrimental reliance, and tortious damage. Bossier City did not move for dismissal of these claims, but rather argued that once all of the federal claims were dismissed, the Court should decline to exercise jurisdiction over the remaining state law claims. See Record Document 90-2 at 22-24. The MPC moved for Rule 12(b)(6) dismissal of the aforementioned state law

---

[10]The Court notes that this finding is limited to the Section 1983 claims against Bossier City based on the actions of the Office of Permits, not the City Council.

claims.

"To establish inverse condemnation, a party must show that: (1) a recognized species of property right has been affected; (2) the property has been taken *or damaged* in a constitutional sense; and (3) the taking *or damaging* was for a public purpose." Belle Co., LLC v. State ex rel. Dept. of Environmental Quality, 2008-2382 (La.App. 1 Cir. 6/12/09), 25 So.3d 847, 853 (emphasis added). This claim is sufficiently supported by Plaintiffs' factual allegations and must survive the MPC's Rule 12(b)(6) motion, as Plaintiffs have alleged that the actions of Defendants, which were purportedly done to further legitimate governmental objectives, in denying curb cut access to the Parkway resulted in damage to the property.

The MPC also moves for dismissal of Plaintiffs' detrimental reliance claim, which is based on Louisiana Civil Code Article 1967. Article 1967 provides in pertinent part:

> Cause is the reason why a party obligates himself.
>
> A party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying.

La. C.C. Art. 1967. A claim under Article 1967 "is based on promissory estoppel, not tort." Stokes v. Georgia-Pacific Corp., 894 F.2d 764, 770 (5th Cir.1990) (detrimental reliance claim is not based on tort). The theory of detrimental reliance serves "to prevent injustice by barring a party from taking a position contrary to his prior acts, admissions, representations, or silence." Suire v. Lafayette City-Parish Consol. Gov't, 2004-1459 (La. 4/12/05), 907 So.2d 37, 59. To establish a detrimental reliance claim, the plaintiff must prove three elements: (1) a representation *by conduct or word*; (2) justifiable reliance; and (3) a change in position to one's detriment because of the reliance. See id. (emphasis added). "Significantly, to prevail on a detrimental reliance claim, Louisiana law does not

require proof of a formal, valid, and enforceable contract." Id. The critical consideration "is not whether the parties intended to perform, but, instead, whether a representation was made in such a manner that the promisor should have expected the promisee to rely upon it, and whether the promisee so relies to his detriment." Id. Again, at this stage of the litigation, this claim is sufficiently supported by Plaintiffs' factual allegations relating to the conduct and words of the MPC as a collective body and the specific actions of its Executive Director.[11]

Finally, the MPC has moved to dismiss Plaintiffs' tortious damage claim asserted under Louisiana Civil Code Article 2315. "Article 2315 contemplates responsibility founded on fault, namely, negligence or intentional misconduct, including abuse of rights." Hero Lands Co. v. Texaco, Inc., 310 So.2d 93, 97 (La. 1975). Fault in the context of Article 2315 "is conduct which violates the standard of reasonableness in the community, an act that a careful and prudent person would not undertake." Id. A review of the complaint and amended complaint reveals that this claim is likewise sufficiently supported by Plaintiffs' factual allegations and must survive Rule 12(b)(6) attack.[12]

## III. CONCLUSION.

Based on the foregoing analysis, the Court finds that Plaintiffs' claims are ripe for review. Additionally, other than their Section 1983 municipal liability claim against Bossier

---

[11]Applying a one year prescriptive period, the MPC argues that Plaintiffs' detrimental reliance claim is prescribed. This argument fails, as detrimental reliance falls within "the contract realm" and the "cause of action is subject to a liberative prescription of ten years" under Louisiana Civil Code Article 3499. Stokes v. Georgia-Pacific Corp., 894 F.2d 764, 770 (5th Cir. 1990).

[12]The MPC also moved for dismissal of Plaintiffs' tortious damage claim as prescribed. For the reasons previously stated in the context of Plaintiffs' Section 1983 substantive due process claim, the Court finds that Plaintiffs' have plead facts sufficient to support the application of the continuing tort theory and/or the doctrine of *contra non valentem*.

City based upon the actions of the Office of Permits, Plaintiffs' complaint and first amended complaint contain sufficient factual matter to state claims to relief that are plausible on their face.

Accordingly,

**IT IS ORDERED** the Motions to Dismiss (Record Documents 68, 83, and 90) filed by Bossier City and the MPC be and are hereby **GRANTED IN PART AND DENIED IN PART**.  Bossier City's Motion to Dismiss (Record Document 90) is **GRANTED** as to Plaintiffs' Section 1983 municipal liability claims against Bossier City based on the actions of the Office of Permits.  The motions are **DENIED** in all other respects.

This matter is hereby referred to the Magistrate Judge for a scheduling conference.[13]

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 27th day of September, 2010.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE

---

[13] In light of this referral, the "Ex Parte and Unopposed Request for Telephone Status Conference" (Record Document 117) is hereby **DENIED AS MOOT**.